PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

Nos. 23-1273 and 23-1281
———

KARS 4 KIDS INC.

v.

AMERICA CAN!
(D.N.J. No. 3-14-cv-07770)

AMERICA CAN! CARS FOR KIDS

v.

KARS 4 KIDS INC.
(D.N.J. No. 3-16-cv-04232)

KARS 4 KIDS, INC.,
                    Appellant in No. 23-1273

AMERICA CAN! and AMERICA CAN! CARS FOR KIDS,
                    Appellants in No. 23-1281
———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 3-14-cv-07770 and 3-16-cv-04232)

District Judge:  Honorable Peter G. Sheridan

———

Argued December 12, 2023
Before:  BIBAS, PORTER, and FISHER, *Circuit Judges*.

(Filed: April 17, 2024)

Upnit K. Bhatti
Orrick Herrington & Sutcliffe
2100 Pennsylvania Ave, N.W.
Washington, DC 20037

Alexandra Bursak
Christopher Cariello  [ARGUED]
Orrick Herrington & Sutcliffe
51 W 52nd Street
New York, NY 10019

Marc D. Haefner
Walsh Pizzi O'Reilly & Falanga
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102

Jonathan Z. King, Esq.
Cowan Liebowitz & Latman
114 W 47th Street
21st Floor
New York, NY 10036
  *Counsel for Appellant in No. 23-1273*

Karen A. Confoy
Corinne M. Trainor
Fox Rothschild
997 Lenox Drive
Princeton Pike Corporate Center, Building 3
Lawrenceville, NJ 08648

Christopher R. Kinkade
Pierson Ferdinand
100 Overlook Center
2nd Floor
Princeton, NJ 08054

Aubrey N. Pittman  [ARGUED]
The Pittman Law Firm
901 Main Street
Suite 3670
Dallas, TX 75202
        *Counsel for Appellants in No. 23-1281*

OPINION OF THE COURT

FISHER, *Circuit Judge*.

"1-877 Kars for Kids, K-A-R-S Kars for Kids . . . donate your car today" has become a familiar musical jingle, and the question before us is whether Kars 4 Kids, Inc. has the right to use it in the state of Texas.[1]

This long-running trademark dispute has returned to this Court for the second time. Kars 4 Kids, Inc. and America Can! Cars for Kids sued one another for infringing on their respective marks. A jury found that Kars 4 Kids infringed on America Can's unregistered mark in Texas. The District Court awarded monetary and injunctive relief. We affirmed in part, but vacated and remanded for the District Court to reexamine its conclusion that the doctrine of laches did not bar America Can's claims. On remand, the District Court's reexamination led it to the same conclusion: that laches did not bar relief. We disagree. Because the District Court abused its discretion by again not properly applying the presumption in favor of laches, and because laches bars both monetary and injunctive relief here, we will vacate and remand with instructions to dismiss America Can's claims with prejudice. We will dismiss as moot America Can's cross-appeal.

I.

A.     Factual Background[2]

America Can and Kars 4 Kids are both charities that sell donated vehicles to fund children's education programs.

---

[1] https://archive.org/details/youtube-ybJ6fS7ruuo.

[2] The history of this case was discussed extensively in our prior decision. *See Kars 4 Kids Inc. v. Am. Can!*, 8 F.4th 209 (3d Cir. 2021). We repeat the most salient facts here.

Texas-based America Can began operations in the late 1980s. In 1989, it started using the name "Cars for Kids" in advertising campaigns. Beginning in the 1990s, America Can used that name in advertisements played on a Dallas-area radio station and in print advertisements in regional publications. During the same period, the Dallas Morning News ran articles and columns discussing America Can's donation program under the "Cars for Kids" name. While America Can's activities had been primarily concentrated in Texas, by 2004, America Can received donations from forty-nine of the fifty states.

New Jersey-based Kars 4 Kids was founded in 1995, and began using its marks, "KARS 4 KIDS" and "1-877-KARS-4-KIDS," in its advertising around 1997. Kars 4 Kids first used flyers and bumper stickers, and later distributed nationwide mailers. In 1999, Kars 4 Kids started using its earworm musical jingle on the radio and later adapted it for television advertisements. By the early 2000s, Kars 4 Kids had begun advertising in regional newspapers and national Jewish publications. In 2003, Kars 4 Kids began advertising in magazines and newspapers and on conventional and internet radio, billboards, and television. It also purchased keyword advertisements on Yahoo and Google.

In 2003, America Can discovered a Kars 4 Kids advertisement in the Dallas Morning News and sent Kars 4 Kids a cease and desist letter, asserting America Can's rights to the "Cars for Kids" mark in Texas. Kars 4 Kids' leadership believed that its use of the mark "Kars 4 Kids" in Texas was lawful and did not take any action in response to the cease and desist letter. America Can's representatives did not notice Kars 4 Kids' advertisements in Texas for several years after sending the letter. But Kars 4 Kids continued to advertise in Texas. In 2005, Kars 4 Kids purchased a national advertisement in Reader's Digest magazine. It also advertised on Google, which

allowed Kars 4 Kids' advertisements to appear nationwide—including in Texas—when potential donors used certain search terms. In 2011, America Can's representatives became aware of the Kars 4 Kids website and growing internet presence. That same year, America Can contacted its lawyers to consider its legal options. In 2013, America Can sent another cease and desist letter, alleging that Kars 4 Kids was unlawfully using "KARS 4 KIDS" in Texas.

### B.    Procedural Background

Kars 4 Kids sued America Can in 2014 in the United States District Court for the District of New Jersey, and America Can countersued in 2015. Both parties alleged federal and state trademark infringement, unfair competition, and trademark dilution claims, and both sought equitable relief. America Can requested cancellation of Kars 4 Kids' trademark for 1-877-KARS-4-KIDS, financial compensation, and a nationwide injunction prohibiting Kars 4 Kids from using the mark.

The parties tried their trademark claims before a jury. The jury found that America Can had trademark rights in the name "Cars for Kids" and that Kars 4 Kids infringed those rights in Texas willfully—that is, knowingly or with reckless indifference. But the jury found that America Can failed to prove that Kars 4 Kids had obtained registration of its 1-877-KARS-4-KIDS mark by false representations.

The District Court held a bench trial on the equitable claims and remedies. The Court held that Kars 4 Kids' laches defense did not apply, finding America Can's executive credibly testified that a review of business records from 2004 to 2011 suggested that America Can "assumed" Kars 4 Kids had "pulled back their advertising" following the 2003 cease and desist letter. *Kars 4 Kids Inc. v. Am. Can!*, No. 3:14-cv-7770 (PGS) (DEA), 2020 WL 1550804, at *4 (D.N.J. Apr. 1,

2020), *aff'd in part, vacated in part, and remanded*, 8 F.4th 209 (3d Cir. 2021). The Court found that this apparent lack of advertising "lulled America Can[] into a passive position until 2011" and "preclude[d] a finding of inexcusable delay." *Id.* The Court also found that Kars 4 Kids tried to "unscrupulously apply" laches "[b]y waiting to tee [] up its laches defense until the remedy stage after litigating for four years." *Id.* The Court stated that Kars 4 Kids did not "show any prejudice" from America Can's alleged delay. *Id.*

The District Court ordered Kars 4 Kids to disgorge $10,637,135, representing its Texas profits for the years 2008–2019, minus advertising and other expenses. The Court declined to award enhanced monetary relief because Kars 4 Kids infringed upon America Can's mark only in Texas, and because Kars 4 Kids did not obtain its mark fraudulently. 2020 WL 1550804, at *9. The District Court enjoined Kars 4 Kids from using its mark in Texas and from using www.carsforkids.com. The Court declined to cancel Kars 4 Kids' registered mark, however, because "the jury determined that Kars 4 Kids did not knowingly procure its registration of the 1-877-Kars-4-Kids trademark by false or fraudulent means." 2020 WL 1550804, at *13. The parties cross-appealed.

This Court affirmed in part, but vacated and remanded for the District Court to reexamine its laches and disgorgement conclusions. *Kars 4 Kids*, 8 F.4th at 226. Regarding laches, we explained that—because America Can waited twelve years to sue—it bore the burden of disproving delay and prejudice. *Id.* at 221. We directed the District Court to consider, as part of its undue delay and prejudice analysis, whether Kars 4 Kids' national advertising reached Texas such that a reasonable entity in America Can's position should have detected it. *Id.* at

222. We also rejected America Can's argument that Kars 4 Kids forfeited its laches defense. *Id.* 221 n.12.

On remand, the District Court again concluded that "laches remains inappropriate in this case." *Kars 4 Kids Inc. v. Am. Can!*, No. 3:14-cv-7770-PGS-LHG, 2022 WL 2106495, at *24 (D.N.J. June 10, 2022). The District Court acknowledged that America Can bore the burden of proving excusable delay and the lack of prejudice on account of delay. *Id.* at *1. It analyzed whether the delay was excusable by considering each portion of Kars 4 Kids' advertising. *Id.* at *2. The Court found that "[Kars 4 Kids'] early advertising prior to 2003 only reached Texas in a negligible manner, if at all." *Id.* at *16. Between 2003 and 2013, "[Kars 4 Kids'] advertising grew in size and types of advertising outlets . . . but most of it failed to reach Texas in an open and notorious manner." *Id.* at *17. In reaching this conclusion, the Court pointed to the lack of testimonial, expert, or documentary evidence demonstrating whether Kars 4 Kids' advertisements were viewed by enough Texans to prompt America Can to act more quickly to protect its mark. *See id.* at *7–15.

Based on the evidence provided, the Court found that because "only a negligible number of advertisements, if any, reached Texas between 2003 and 2011, an entity in America Can's shoes would not conclude that it had a valid claim of infringement against [Kars 4 Kids] any earlier than 2011." *Id.* at *18. It wasn't until 2013, according to the Court, that "[Kars 4 Kids] began openly advertising via radio in Texas, a clearly open and notorious infringement that a reasonable entity in America Can's shoes would be expected to act upon." *Id.* The Court held that because America Can sued Kars 4 Kids in 2015, there was "no inexcusable delay by America Can between 2003 and 2013." *Id.* at *20.

8

The District Court held that Kars 4 Kids was not prejudiced by America Can's delay because receipt of the 2003 cease and desist letter meant that Kars 4 Kids "assumed the risk of its advertising campaigns" for the ten years that followed. *Id.* In this Court's decision in the first appeal, we noted that certain circuits had accepted this line of "assumption of the risk" reasoning and invited the District Court to consider several cases when deciding on remand whether Kars 4 Kids had been prejudiced. *Kars 4 Kids*, 8 F.4th at 222 n.13.[3] The District Court found this assumption-of-the-risk reasoning persuasive and held on that basis that Kars 4 Kids was not prejudiced by America Can's delay. The Court also found that "[a]nother reason" for America Can's delay in filing suit was Kars 4 Kids' progressive encroachment into the Texas market. *See* 2022 WL 2106495, at *19 (describing Kars 4 Kids' "slow, steady change in the use of a mark in a new territory"). Finally, the Court concluded that Kars 4 Kids' willful infringement "over the years constitutes unclean hands that precludes the invocation of laches." *Id.* at *21.

---

[3] Those cases all similarly reasoned that "forewarning of a plaintiff's objections generally prevents a defendant from making a laches defense." *Roederer v. J. Garcia Carrion, S.A.*, 569 F.3d 855, 859 (8th Cir. 2009); *see also Elvis Presley Enters., Inc, v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998) ("[A]cts after receiving a cease and desist letter are at the defendant's own risk because it is on notice of the plaintiff's objection to such acts."); *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 151–52 (5th Cir. 1985); *Citibank, N.A. v. Citibanc Grp., Inc.*, 724 F.2d 1540, 1546–47 (11th Cir. 1984).

II.      Standard of Review[4]

Our review of a District Court's decision on laches is multifaceted. "We review factual findings such as length of delay and prejudice under the clearly erroneous standard; we review the district court's balancing of the equities for abuse of discretion; and our review of legal precepts applied by the district court in determining that the delay was excusable is plenary." *Bermuda Exp., N.V. v. M/V Litsa (Ex. Laurie U)*, 872 F.2d 554, 557 (3d Cir. 1989).

III.     The Doctrine of Laches Bars America Can's Claims Against Kars 4 Kids

A.      Legal Framework

The Lanham Act does not contain a statute of limitations. Instead, it subjects all claims to "the principles of equity," including laches. *Kars 4 Kids*, 8 F.4th at 220 (quoting *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 135 (3d Cir. 2005)). To determine whether laches bars a claim, we consider two elements: (1) whether the plaintiff inexcusably delayed in bringing suit, and (2) whether the defendant was prejudiced as a result of the delay. *See Santana Prods.*, 401 F.3d at 138.[5]

We determine which party bears the burden of proof for a laches claim by identifying "the most analogous statute of

---

[4] The District Court had jurisdiction under 28 U.S.C. §§ 1331 (federal questions) and 1338(a) (civil actions relating to patents, copyrights, and trademarks). We exercise appellate jurisdiction under 28 U.S.C. § 1291 (final decisions of district courts).

[5] Both Kars 4 Kids and America Can are plaintiffs in their respective actions. For purposes of Kars 4 Kids' laches defense, however, America Can is the plaintiff and Kars 4 Kids is the defendant.

limitation as a guideline," and then determining whether that period has expired. *Kars 4 Kids*, 8 F.4th at 220 (quoting *Santana Prods.*, 401 F.3d at 135). If so, the defendant "'enjoys the benefit of a presumption of inexcusable delay and prejudice,' and the plaintiff 'carrie[s] the burden of proving that its delay was excusable and that [the delay] did not prejudice [the defendant].'" *Id.* at 221 (alterations in original) (quoting *Santana Prods.*, 401 F.3d at 138–39).

Here, the parties agree that their Lanham Act claims are "properly analogized to New Jersey's six year fraud statute." *Id.* (quoting *Kaufhold v. Caiafa*, 872 F. Supp. 2d 374, 379 (D.N.J. 2012)). "Because America Can first discovered Kars 4 Kids' allegedly wrongful conduct in 2003 and did not bring its counterclaims until 2015, the statute of limitations had run on America Can's claims." *Id.* It must be presumed, then, that America Can's claims are barred by laches unless it establishes both that (1) its delay in suing was excusable and (2) the delay did not prejudice Kars 4 Kids. *Univ. of Pittsburgh v. Champion Prods. Inc.*, 686 F.2d 1040, 1044 (3d Cir. 1982).

B.    Failure to Apply the Presumption of Laches
Was an Abuse of Discretion

"[L]aches is an equitable doctrine addressed to the sound discretion of the district judge, whose determination we will not disturb absent an abuse of that discretion." *Id.* at 1045. As is the case here, however, a district court abuses its discretion when it applies an incorrect legal standard. *See Santana Prods.*, 401 F.3d at 138 ("We conclude that the District Court erred because it did not use the appropriate legal standard to assess [the] laches defense."); *Churma v. U.S. Steel Corp.*, 514 F.2d 589, 593 (3d Cir. 1975) ("Whether the district court has utilized the correct legal principles is freely reviewable by this court . . . .").

In the first appeal, we vacated the District Court's judgment and remanded on the question of laches because the District Court did not apply the presumption in favor of laches or consider whether Kars 4 Kids' national advertising reached Texas such that an entity in America Can's shoes could or should have detected it. *Kars 4 Kids*, 8 F.4th at 221–22. The District Court has repeated the mistake and has abused its discretion in failing to apply the correct legal standard on remand. Specifically, the District Court did not hold America Can to its burden to establish that its delay in bringing suit was excusable, and wrongly circumvented a prejudice analysis by concluding instead that Kars 4 Kids had "assumed the risk" following its receipt of the 2003 cease and desist letter.

### 1.    Delay

The doctrine of laches is "based upon [the] maxim that equity aids the vigilant and not those who slumber on their rights." *Kansas v. Colorado*, 514 U.S. 673, 687 (1995) (quoting Black's Law Dictionary 875 (6th ed. 1990)). In order to avoid the application of laches, America Can had to show that "a reasonable person in [its] shoes would have waited to file suit." *Kars 4 Kids*, 8 F.4th at 222. "Open and notorious use by the defendant is relevant to the plaintiff's knowledge and, thus, whether its delay is excusable." *Univ. of Pittsburgh*, 686 F.2d at 1044 n.14. The answers to two distinct but related questions determine whether America Can is able to rebut the presumption of inexcusable delay: What did America Can know? And what did America Can do? The District Court abused its discretion by erroneously holding Kars 4 Kids responsible for answering the first question, and not sufficiently considering the second.

### *America Can's Knowledge of Kars 4 Kids'*
### *Advertising Reaching Texas*

"A plaintiff is not obligated to sue until it knows or should know that the defendant's conduct constitutes trademark infringement." *Kars 4 Kids*, 8 F.4th at 221 (collecting cases). On remand, the District Court made extensive findings—consistent with our directive—detailing all of Kars 4 Kids' national and Texas-specific advertising from 2003 to 2019. And the Court did acknowledge that "America Can bears the burden of disproving delay." 2022 WL 2106495, at *1 (quoting *Kars 4 Kids*, 8 F.4th at 221).

In the analysis that the Court conducted, however, it functionally reversed the presumption of laches by discounting evidence of Kars 4 Kids' presence in Texas because Kars 4 Kids did not show whether these advertisements were viewed by a sufficient number of Texans to put America Can on actual or constructive notice. *See* 2022 WL 2106495, at *7–13 (noting Kars for Kids did not provide mailing lists for postcards or national email blasts; holding the record contained insufficient detail about Yahoo and Google web advertising, 2003 print advertising in Texas, and 2003–04 CBS radio advertisements; and concluding there was no evidence that vendor "Clear Channel Outdoor TX" provided billboards in Texas or that a 2005 Reader's Digest advertisement reached Texas in any appreciable or open and notorious manner). Discussing Kars 4 Kids' internet advertising, the Court concluded that "there is no way to calculate market penetration in this case" because "*neither party* has undertaken any such analysis." *Id.* at *17 (emphasis added).

Such burden shifting is legal error because it was America Can's burden to establish that it was not aware of Kars 4 Kids' presence in Texas. Under the presumption of laches, Kars 4 Kids had no obligation to establish anything. That

burden was America Can's alone. *See Burke v. Gateway Clipper, Inc.*, 441 F.2d 946, 949 (3d Cir. 1971) (when the analogous statute of limitations has run, this Court "requires the plaintiff to come forward and prove that his delay was excusable").

The District Court also discounted evidence that America Can was aware that Kars 4 Kids continued to operate as a competitor in the years following the 2003 cease and desist letter. America Can's director of marketing testified that she became aware of Kars 4 Kids around 2006 when she heard from "donors that were confused" about the difference between the charities. JA1198. The District Court concluded that it would be merely "speculative" to find the donor confusion sufficient to "prompt action" by America Can because the record did not indicate whether the confused donors were from Texas. 2022 WL 2106495, at *13. This again inverts the burden. America Can was charged with establishing that it was not aware of Kars 4 Kids' presence in Texas. It could have inquired with those confused donors about their location or where they encountered Kars 4 Kids' advertisements. America Can made no such inquiry. Had the District Court held America Can to its burden, it would have concluded that America Can failed to elicit testimony that America Can was not aware of Kars 4 Kids' presence in Texas.

America Can argues that the District Court did not err in how it weighed this evidence. It asserts that the Court instead appropriately shifted the burden back to Kars 4 Kids after America Can overcame the rebuttable presumption of inexcusable delay. It overcame the presumption, America Can claims, because it produced all the evidence it possessed concerning Kars 4 Kids' advertising. According to America Can, requiring any more would ask it to prove a negative. The District Court, however, engaged in no such sequential

analysis. It sought solely to determine whether Kars 4 Kids' advertisements reached Texas, based on whether Kars 4 Kids could establish sufficient market penetration.

Even assuming that America Can satisfied the burden of production, however, satisfying the burden of proof also requires satisfying the burden of persuasion. *See McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 287 (3d Cir. 2006). A District Court abuses its discretion when it fails to hold the correct party to its burden of persuasion. *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 295 (3d Cir. 2010). It follows that the District Court abused its discretion by placing the burden of persuasion on Kars 4 Kids. It was America Can's obligation to persuade the Court that it was not sufficiently aware of Kars 4 Kids' use of its mark in Texas. The District Court erred by not holding America Can to that burden.

### America Can's Affirmative Inquiry and Protection of its Mark

The second question to consider when assessing the delay prong of laches is what America Can did to identify and stop any potentially infringing behavior. This Court has required "diligence" on behalf of parties in America Can's shoes. *United States v. Koreh*, 59 F.3d 431, 445 (3d Cir. 1995) (describing diligence as the standard for undue delay). Our sister circuits agree that proactive inquiry is relevant to determining if any delay was excusable. *See, e.g.*, *Chattanooga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 793 (7th Cir. 2002) ("[A] trademark owner is chargeable with information it might have received had due inquiry been made.") (internal quotation marks and citation omitted); *Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1340 (Fed. Cir. 1998) (holding that, after being on notice of a potential infringer, the plaintiff's "failure to investigate" was "especially egregious").

The District Court considered the reach of Kars 4 Kids' advertising, but did not seriously engage with America Can's obligation to diligently and affirmatively protect its mark. The Court accepted the testimony of America Can's Chief Operating Officer Malcolm Wentworth that "America Can personnel did not see any infringing [Kars 4 Kids] advertisements in Texas again for many years" following the 2003 cease and desist letter. 2022 WL 2106495, at *8. But Wentworth did not begin work as COO until 2011. His 2019 testimony about what America Can knew years before he was involved with the car donation program thus reflects only the fact that America Can had no record of Kars 4 Kids' advertisements during the time in question. It does not indicate whether America Can personnel took any affirmative steps to discover potential infringement.

On appeal, America Can argues that it was "diligent in looking for infringement," and that it "did investigate and found nothing." America Can Br. 51. However, it provides neither an example of this investigation nor a record citation to support its assertion. Even when confronted with donors who were confused between the two organizations, the record does not show that America Can took any action to investigate. Without more, America Can fails to meet its burden of demonstrating that its delay was reasonable because it diligently protected its mark during the relevant period. *See Koreh*, 59 F.3d at 445.

America Can argues it "cannot show what does not exist." America Can Br. 42. True enough. But evidence of America Can's diligence in protecting its mark would exist had it done so. It was America Can's burden to show what it knew about Kars 4 Kids and what it did to protect its mark. The District Court erred when it failed to hold America Can to that burden.

2.    Prejudice

"[P]rejudice resulting to the defendant from [the] delay" is the second "essential element[]" for the application of laches. *Univ. of Pittsburgh*, 686 F.2d at 1044. "Courts have identified two types of prejudice caused by delay: (1) evidentiary; and (2) economic or expectation-based." 4 McCarthy on Trademarks and Unfair Competition § 31:12 (5th ed. 2024) (internal quotation marks omitted). "Evidentiary prejudice exists where a plaintiff's delay has led to 'lost, stale, or degraded evidence, or witnesses whose memories have faded . . . .'" *Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1120 (9th Cir. 2018) (quoting *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012)). Economic prejudice exists where "a defendant 'took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly.'" *Id.* (quoting *Evergreen*, 697 F.3d at 1227). A defendant demonstrates economic prejudice "by proving that it has continued to build a valuable business around its trademark during the time that the plaintiff delayed the exercise of its legal rights." *Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1105 (9th Cir. 2004) (citing 5 McCarthy § 31:12); *see also Gruca v. U.S. Steel Corp.*, 495 F.2d 1252, 1260 (3d Cir. 1974) ("Pecuniary loss is a very real factor to be considered in determining whether prejudice to the defendant exists."). It would be inequitable for a plaintiff "with knowledge of a claimed invasion of right, to wait to see how successful his competitor will be and then destroy with the aid of a court decree, much that the competitor has striven for and accomplished." *Anheuser-Busch, Inc. v. Du Bois Brewing Co.*, 175 F.2d 370, 375 (3d Cir. 1949).

America Can bore the burden of establishing that Kars 4 Kids was not prejudiced as a result of its delay in bringing suit. *See Kars 4 Kids*, 8 F.4th at 221. But rather than engaging

in an analysis of evidentiary or economic prejudice, the District Court held that Kars 4 Kids was not prejudiced because it assumed the risk of losing any investment made after receiving the 2003 cease and desist letter. *See* 2022 WL 2106495, at *20–21. The cases cited by America Can and relied upon by the District Court to reach that conclusion, however, are distinguishable from the facts here. In both Fifth Circuit cases, the plaintiff sued only one year after sending a demand letter. *See Elvis Presley Enters.*, 141 F.3d at 192; *Conan Props., Inc.*, 752 F.2d at 148. In the Eleventh Circuit decision, the plaintiff repeatedly warned the defendant by letter and ultimately sued within two years of the defendant drastically increasing the infringing behavior. *Citibank*, 724 F.2d at 1546. Each of those cases involved a registered trademark, whereas America Can's mark was unregistered. Registration, while not determinative of a party's rights, is relevant because "federal registration of a trademark is prima facie evidence of the mark's validity, the registrant's ownership of the mark, and its exclusive right to use the mark in commerce." *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 315 (3d Cir. 1999); *see also Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc.*, 921 F.2d 467, 472 (3d Cir. 1990) (distinguishing between alleged infringement of a registered mark and distinctive trade dress).

America Can's inaction was of a different order. It observed what it believed to be infringing behavior in 2003, so it sent a cease and desist letter. In the ten years that followed, however, America Can took no proactive steps to police the marketplace or protect its mark. In fact, a total of twelve years elapsed before America Can filed suit. During that time, and confident in its ability to rightfully use its mark, Kars 4 Kids steadily increased its investment in that mark. From 2004 to 2014, it spent more than $75 million on advertising. It also increased its Texas-specific advertising between 2003 and

2019, resulting in over $16,000,000 in net revenue from thousands of donations in Texas from 2008 to 2019. This prolonged and concerted investment in its brand and the related goodwill, without any further contact from America Can, constitutes classic economic prejudice. *See, e.g.*, *Eat Right Foods*, 880 F.3d at 1119–20; *Anheuser-Busch*, 175 F.2d at 375. To the extent that America Can had difficulty meeting its burden to establish that these advertisements did not reach a sufficient number of Texans, that is a feature—not a bug—of evidentiary prejudice and the shifting burden after so many years of America Can's inaction.

America Can's 2003 decision to send a cease and desist letter was an important and perhaps necessary step in acting to diligently protect its mark. However, it was not—on its own—sufficient to warrant a finding that Kars 4 Kids assumed more than ten years' and tens of millions of dollars' worth of risk following receipt of that letter when Kars 4 Kids reasonably believed it had the right to use its mark. Were we to hold otherwise on this record, a mark holder could be empowered to send a single demand letter and then rest comfortably in the knowledge that it need not concern itself with any prejudice caused by its delay before acting again to protect its mark. There may be circumstances, consistent with our sister circuits' reasoning, under which it would be appropriate to hold that an alleged infringer has assumed the risk for its conduct following a mark holder's warning. But this is not that case. The letter that started the laches clock here does not foreclose the potential for future prejudice. Kars 4 Kids did not assume the risk, and America Can has otherwise failed to meaningfully rebut the presumption that Kars 4 Kids suffered prejudice during the time America Can inexcusably delayed in acting to protect its mark.

*    *    *

In our prior decision, we instructed the District Court to hold America Can to its burden of establishing that its delay was excusable and that Kars 4 Kids was not prejudiced as a result of that delay. Because America Can failed to meet that burden, it failed to overcome the presumption of laches and its claims against Kars 4 Kids are therefore barred.

### C.    Kars 4 Kids Did Not Progressively Encroach on America Can's Mark in Texas

America Can's delay was further excusable, according to the District Court, because the character of Kars 4 Kids' advertising "changed substantially over the years." 2022 WL 2106495, at *19 (quoting *Univ. of Pittsburgh*, 686 F.2d at 1046). The Court found that "[Kars 4 Kids'] advertising appeared in Texas in 2003, more or less disappeared from Texas until 2011 when it appeared in a limited way on the internet, and then openly reappeared in 2013 in Texas with a burst of radio advertisements." *Id.* (internal citations omitted). This excuses America Can's delay, in the District Court's view, because the "progression of [Kars 4 Kids'] advertising methods illustrates a slow, steady change in the use of a mark in a new territory." *Id.* The basis for this holding, the doctrine of progressive encroachment, is inapposite here for two reasons.

First, the laches period began in 2003 when America Can asserted that Kars 4 Kids was already engaged in actionable infringement. It cannot be said, then, that Kars 4 Kids' presence in Texas constituted a "slow, steady" change that progressed towards infringement. Second, Kars 4 Kids did not change how it used its mark or enter into a new territory. *See Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n*, 465 F.3d 1102, 1110 (9th Cir. 2006) (quoting *Grupo Gigante*, 391 F.3d at 1105) ("To establish progressive encroachment, Creamery would have had to show that Smoker

'expand[ed] its business into *different* regions or into *different* markets.'" (alteration in original)). Kars 4 Kids continued to expand the use of its mark nationally, which included Texas. And a normal expansion in the quantity of Kars 4 Kids' advertising does not constitute progressive encroachment. *See id.* ("A junior user's growth of its existing business and the concomitant increase in its use of the mark do not constitute progressive encroachment.").

D.    The Doctrine of Unclean Hands Does Not Bar
Kars 4 Kids' Laches Defense

We noted in our earlier decision America Can's argument that Kars 4 Kids acted with unclean hands and therefore that its laches defense was inappropriate. *Kars 4 Kids*, 8 F.4th at 221 n.12. We left it to the District Court to determine if "the equities of the case outweigh any finding of delay or prejudice," and to clarify whether its description of Kars 4 Kids' conduct as "willful" should be understood to find that Kars 4 Kids acted with "intent" as a "knowing infringer" or merely as a "reckless infringer." *Id.*

On remand, the District Court found that the doctrine of unclean hands barred Kars 4 Kids' laches defense. 2022 WL 2106495, at *21. In support of this finding, the Court pointed to (1) the fact that Kars 4 Kids did not undertake an investigation in response to the 2003 cease and desist letter; (2) the Kars 4 Kids founder's "dismissive" testimony that he believed America Can was trying to piggyback on Kars 4 Kids and that Kars 4 Kids didn't take America Can seriously; (3) Kars 4 Kids' registration of the domain www.carsforkids.com without any disclaimer or acknowledgement of America Can; and (4) an internal Kars 4 Kids email acknowledging that there might be confusion within Texas regarding the two similarly named organizations, and suggesting that such confusion "may be to [Kars 4 Kids']

advantage" in the beginning but may ultimately "hurt" Kars 4 Kids "in the long run." *Id.* The District Court again described this conduct as "willful infringement" and concluded that the imposition of laches would be inappropriate on that basis. *Id.* at *22.

"The equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001). This Court has required "clear, convincing evidence of egregious misconduct before invoking the doctrine of unclean hands." *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 129 (3d Cir. 2004) (internal quotation marks and citation omitted). The misconduct must be rooted in "fraud, unconscionable conduct, or bad faith . . . that injures the other party and affects the balance of equities." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 n.12 (3d Cir. 1999); *see also Anheuser-Busch*, 175 F.2d at 374 ("[A] fraudulent infringer cannot expect tender mercy of a court of equity . . . .").

"Mere knowledge" of another's mark, however, is insufficient to constitute fraudulent intent. *Anheuser-Busch*, 175 F.2d at 374–76 ("[A]wareness of the business possibilities of a name is not persuasive proof that the choice of the name was with fraudulent intent; i.e., a conscious effort to woo the unsuspecting disciples of [a competitor's] products."); *see also Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1029 (9th Cir. 2018) (holding that a defendant who was aware of a plaintiff's mark and understood there was a likelihood of confusion was not guilty of unclean hands where the defendant believed its conduct was not infringing).

The District Court erred here because it did not answer the predicate question we posed in the first appeal—whether

Kars 4 Kids was an intentional, knowing infringer—and therefore applied an erroneous legal standard. In its discussion of unclean hands on remand, the District Court again repeated that Kars 4 Kids' infringement was "willful," without specifying whether Kars 4 Kids acted with a bad-faith intent to deceive or defraud, or merely with recklessness.[6] This point is salient because the jury could have found that Kars 4 Kids' conduct was willful based on recklessness alone. Willfulness—as defined for the jury and not further clarified by the District Court—is insufficient to support a finding of unclean hands. *See Paramount*, 178 F.3d at 147 n.12 (requiring "fraud, unconscionable conduct, or bad faith").

When evaluated under the appropriate standard, the conduct relied upon by the District Court fails to rise to the level of unclean hands. For instance, the District Court considered Kars 4 Kids' decision not to investigate America Can and to continue using its own mark after receiving the cease and desist letter as evidence of sufficiently culpable behavior. But we have held that a party's "failure to stop its use of [a competitor's] mark after receiving [a] cease and desist letter does not demonstrate willful infringement" or necessarily show bad faith. *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 189 (3d Cir. 1999), *abrogated in part by Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175 (3d Cir. 2005). That is especially so where, as here, America Can's trademark is not registered. *See Charles Jacquin*, 921 F.2d at 471–72.

---

[6] We review the District Court's balancing of the equities for an abuse of discretion, and our review of the legal precepts applied by the District Court is plenary. *See Bermuda Exp., N.V.*, 872 F.2d at 557.

As for Kars 4 Kids' dismissive attitude and the rest of the conduct relied upon by the District Court, we note that both parties to this litigation engaged in unscrupulous activity. America Can stated that it could "take advantage" of what Kars 4 Kids built and that it was "[c]ool" that America Can received a donation intended for Kars 4 Kids. JA1599–1600. For its part, Kars 4 Kids suggested it could "bait" America Can and "see what happens," and, as recognized by the District Court, stated that confusion between the two organizations could redound to its benefit. JA1513. Both organizations registered domain names that invoke the name of the other. *See* JA1312 (America Can's site "kar4kids.com"); JA1924 (Kars 4 Kids' site "carsforkids.com").

Neither party's conduct in this matter, upon the close inspection necessitated by litigation, was beyond reproach. But nor is there clear and convincing evidence that either party engaged in the type of egregious, unconscionable misconduct demonstrating the fraudulent intent or bad faith necessary for the doctrine of unclean hands to apply. *See Citizens Fin. Grp.*, 383 F.3d at 129; *Paramount*, 178 F.3d at 147 n.12. It was therefore error for the District Court to find that Kars 4 Kids' "willful" conduct satisfies the legal standard for unclean hands on this record.

IV.    Laches Bars Both Monetary and Injunctive Relief

Laches, an equitable doctrine, generally cannot bar damages, a legal remedy. *Petrella v. Metro-Goldwyn-Mayer*, 572 U.S. 663, 678 (2014). But trademark law is an exception to that rule. Because the Lanham Act has no statute of limitations and applies the principles of equity to all claims, laches may bar both equitable *and* legal relief. 15 U.S.C. § 1117(a) (making damages claims "subject to the principles of equity"); *see also* 4 McCarthy § 31:4 (5th ed.); *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 997 (9th Cir. 2006)

("It is well established that laches is a valid defense to Lanham Act claims for both monetary damages and injunctive relief.").

We have recognized that laches does not act, in every instance, as a per se bar to all relief in a trademark dispute. *See Univ. of Pittsburgh*, 686 F.2d at 1044. Where only delay—but not prejudice—is established, we have concluded that laches may bar retrospective monetary relief but not prospective injunctive relief. *See id.* (recognizing that "mere delay" or "laches without more" typically bars only monetary recovery unless the delay is so "outrageous . . . as to constitute a virtual abandonment" of a mark) (citation omitted). "Actual laches," on the other hand, "works an equitable estoppel barring all relief" where "both delay and prejudice" are established. *Id.* (internal quotation marks and citation omitted); *see also Santana Prods.*, 401 F.3d at 140 (holding that a plaintiff's failure to rebut the presumption of laches after the analogous statute of limitations had run barred a Lanham Act claim requesting both injunctive and monetary relief).

This is a case of "actual laches." Because the analogous statute of limitations had run, America Can bore the burden of proving both that its delay was excusable, and that Kars 4 Kids was not prejudiced. As explained above, it failed to do so. America Can failed to show that it diligently worked to protect its mark in the years following the 2003 cease and desist letter. During that time, Kars 4 Kids continued to build up valuable recognition and goodwill around its mark nationwide, including in Texas. As a result of America Can's failure to meet its burden as to both delay and prejudice, laches "bar[s] all relief" America Can seeks. *Univ. of Pittsburgh*, 686 F.2d at 1044.

America Can argues for the first time in supplemental briefing that, notwithstanding a finding that laches properly bars monetary relief, the public interest favors upholding the

injunction. The principle underlying this argument—the doctrine or rule of inevitable confusion—has been recognized by some of our sister circuits.[7] The Eleventh Circuit has held that "if the likelihood of confusion is inevitable, or so strong as to outweigh the effect of the plaintiff's delay in bringing a suit, a court may in its discretion grant injunctive relief, even in cases where a suit for damages is appropriately barred." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1011 (11th Cir. 2021) (quoting *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1207 (11th Cir. 1997)). The Ninth Circuit applies the doctrine only in the "narrow set of circumstances . . . when the suit concerns allegations that the product is harmful or otherwise a threat to public safety and well being." *Pinkette Clothing*, 894 F.3d at 1029.

Whatever the doctrine's merits, we decline to apply it for the first time here. While America Can argued before the District Court that the public interest would be served if Kars 4 Kids was enjoined from using its mark in Texas, at no point in this litigation did America Can argue that the injunction could or should remain in place in the event that laches was found to bar monetary relief. And arguments asserted for the first time on appeal or arguments not raised in a party's opening brief are generally deemed forfeited. *See Simko v. U.S. Steel Corp.*, 992 F.3d 198, 205 (3d Cir. 2021); *United States v. Quillen*, 335 F.3d 219, 224 (3d Cir. 2003).

At oral argument, counsel for America Can appeared to concede that this issue had not been briefed, but claimed that was because Kars 4 Kids failed to raise the argument. This again misunderstands the parties' relative burdens. Our precedent is clear that a finding of "actual laches" bars all

---

[7] *See* 4 McCarthy § 31:10 (5th ed.) (collecting cases).

relief—monetary as well as injunctive. *See Univ. of Pittsburgh*, 686 F.2d at 1044. Given that the parties did not explicitly address this issue until after oral argument in the second appeal, we will not now consider the applicability of the doctrine here as an exception to our established precedent.

America Can failed to rebut the presumption in favor of laches as to both delay and prejudice, and that failure is not absolved by the doctrine of inevitable confusion. Laches therefore properly bars both monetary and injunctive relief.

## V.

For these reasons, we will vacate the District Court's judgment granting monetary and injunctive relief, and remand with instructions to dismiss America Can's claims with prejudice based on laches. We will dismiss as moot America Can's cross-appeal.